IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 2 5 2004

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

NANCY SCHONFELD MCGOON                                          **PLAINTIFF**

v.                          Case No.  **4 -04   CV0 0 0 0609 IRW**

WALTON ENTERPRISES, INC., a Delaware
corporation; S. ROBSON WALTON;
JOHN DOES 1-20; and BENCHMARK REALTY
ADVISORS, INC., an Arkansas corporation,
successor to PHILLIPS COMPANIES, INC.,
an Arkansas corporation                                        **DEFENDANTS**

This case assigned to District Judge _Walson_
and to Magistrate Judge _Young_

## COMPLAINT

For her complaint against defendants, plaintiff states that:

1.      Plaintiff, Nancy Schonfeld McGoon ("McGoon"), is a citizen and resident of California.

2.      Defendant Walton Enterprises, Inc. ("Walton Enterprises") was a Delaware corporation with its principal place of business in Arkansas.

3.      On information and belief, defendants R. Robson Walton ("Walton") and John Does 1-20 ("Does") are citizens and residents of Arkansas.

4.      Defendant Benchmark Realty Advisors, Inc. ("Benchmark") is an Arkansas corporation with its principal place of business in Arkansas.

5.      Benchmark's predecessor, Phillips Companies, Inc. ("Phillips Companies"), was an Arkansas corporation with its principal place of business in Arkansas.

6.     This Court has subject matter jurisdiction of this case under 28 U.S.C. § 1332. The matter in controversy exceeds $75,000, exclusive of interest and costs, and the action is between citizens of different states.

7.     This Court has personal jurisdiction of defendants.

8.     This Court is a proper venue for this case under 28 U.S.C. § 1391.

9.     McGoon owns the following real property in Pulaski County, Arkansas:

Lot 2, Briley Commercial Addition in the City of Sherwood and in the City of North Little Rock, Pulaski County, Arkansas, more particularly described as follows:

A tract of land in the SW 1/4, Section 17, Township 2 North, Range 11 West, Pulaski County, Arkansas, more particularly described as:  Starting at an iron pin at the Southwest corner of the NE 1/4 SW 1/4, Section 17; thence South 00 degrees 31 minutes 15 seconds East along the West line of the SE 1/4 SW 1/4 for 141.90 feet to an iron pin; thence North 89 degrees 28 minutes 45 seconds East for 30.00 feet to the point of beginning; thence North 00 degrees 31 minutes 15 seconds West for 89.05 feet to a point; thence North 55 degrees 05 minutes 05 seconds East for 112.63 feet to a point; thence North 34 degrees 54 minutes 55 seconds West for 158.10 feet to a point; thence North 89 degrees 09 minutes 16 seconds West for 85.95 feet to a point; thence North 34 degrees 54 minutes 55 seconds West for 285.97 feet to a point; thence North 55 degrees 09 minutes 00 seconds West for 290.49 feet to a point on the Easterly right of way line of U.S. Highway 67-167; thence North 34 degrees 51 minutes 00 seconds East along the said right of way line for 30.00 feet to an iron pin at the Southwest corner of Lot 1, Briley Commercial Addition; thence South 55 degrees 09 minutes 00 seconds East along the Southwesterly line of said Lot 1 for 269.58 feet to an iron pin; thence North 55 degrees 05 minutes 05 seconds East along the Southeasterly line of said Lot 1 for 350.09 feet to a point; thence South 34 degrees 54 minutes 55 seconds East for 334.02 feet to a point; thence North 55 degrees 05 minutes 05 seconds East for 80.33 feet to a point; thence South 56 degrees 18 minutes 10 seconds East for 50.48 feet to a point; thence South 89 degrees 50 minutes 04 seconds East for 193.57 feet to a point; thence South 00 degrees 51 minutes 44 seconds West for 175.29 feet to the beginning of a tangential curve to the right having a radius of 100 feet; thence along said curve for 94.64 feet to the point of tangency at the end of said curve; thence South 55 degrees 05 minutes 05 seconds West for 88.81 feet to the beginning of a tangential curve to the right having a radius of 100 feet; thence along said curve for 27.01 feet to the point of tangency at the end of said curve; thence South 70 degrees 33 minutes 43 seconds West for 95.72 feet to a point; thence South 00 degrees 31 minutes 15 seconds East for

145.94 feet to an iron pin; thence South 89 degrees 28 minutes 45 seconds West for 300.00 feet to the point of beginning, containing 7.340 acres, more or less.

10.    McGoon owns all improvements on this real property, and, together, the real property and the improvements are referred to in this complaint as the "Property."

11.    The Property was acquired by Sidney Schonfeld and Marie Schonfeld pursuant to a warranty deed from Karen E. Flake, George M. Wells, and Rebecca F. Wells, which was recorded on February 5, 1991.  Sidney Schonfeld became the sole owner upon the death of his wife, Marie Schonfeld, on June 12, 1996.

12.    McGoon obtained the Property by a warranty deed from Sidney Schonfeld, which was recorded on August 15, 1997.

13.    In a lease dated January 10, 1990 (the "Lease"), Karen E. Flake, George M. Wells, and Rebecca F. Wells leased the Property to Walton Enterprises.  A copy of the Lease is attached to this complaint as Exhibit A.

14.    In an assignment and assumption of lease dated July 16, 1990 (the "Assignment and Assumption of Lease"), Walton Enterprises assigned its rights under the Lease to Phillips Companies, and Phillips Companies assumed and agreed to perform all of Walton Enterprises' obligations under the Lease.  A copy of the Assignment and Assumption of Lease is attached to this complaint as Exhibit B.

15.    In an assignment and assumption agreement dated July 16, 1990, Phillips Companies assigned its rights under the Lease to ATI, Inc., an Oklahoma corporation ("ATI"), and ATI assumed and agreed to perform all of the obligations of the lessee under the Lease.

16.    In a First Addendum to the Lease dated January 28, 1991, Karen E. Flake, George M. Wells, and Rebecca F. Wells and ATI agreed that the ground minimum rent and building minimum rent under Sections 5.01 and 5.02 of the Lease was $541,381.93 per year, payable in

3

equal monthly installments of $45,115.16, subject to adjustments referred to in Section 5.01 of the Lease with respect to the ground minimum rent.

17.    On information and belief, ATI assigned its interest in the Property to an affiliated company, Fleming Companies, Inc., an Oklahoma corporation ("Fleming").

18.    In a Sublease Agreement dated July 18, 1996, Fleming subleased the Property to Big Sur Waterbeds, Inc., a Colorado corporation ("Big Sur").

19.    Since approximately the date of the Sublease Agreement, Big Sur and/or one or more affiliated companies have been in possession of the Property and have used it in their businesses.  These companies are referred to as the "Parties in Possession."

20.    Since taking possession of the property, the Parties in Possession have paid to McGoon some of the amount due as rent under the Lease and some of the other amounts for which the lessee is obligated under the Lease.

21.    For a time, Fleming also paid to McGoon part of the amount due as rent under the Lease.  On April 1, 2003, however, Fleming filed a Chapter 11 bankruptcy, Case No. 03-10945 (MFW) in the United States Bankruptcy Court for the District of Delaware.  Pursuant to an order entered by that court in that case on or about June 4, 2003, Fleming's rights and obligations in connection with the Lease were deemed rejected as of May 19, 2003.  Thereafter, the Parties in Possession have continued to pay to McGoon some of the amount due as rent under the Lease and some of the other amounts for which the lessee is obligated under the Lease.

22.    Under the Lease and the other pertinent documents, Walton Enterprises and Benchmark (successor to Phillips Companies) have been liable continuously, and remain liable, for all obligations of the lessee, including the payment of rent and all other amounts to be paid by

4

the lessee.  None of the documents or transactions has relieved Walton Enterprises or Benchmark of those obligations.

      23.     The Lease states, in part, as follows:

ARTICLE X - SUBLEASE OR ASSIGNMENT

     Section 10.01  Right to Sublease or Assign.

       Subject to the use restrictions contained in the ECR Document, LESSEE shall have the right to sublease all or part of the Building Premises for any lawful purpose.  Likewise, LESSEE shall have the right to assign this Lease.  **LESSEE'S primary obligation and liability hereunder shall not be altered, diminished, changed or affected in any way by the sublease or assignment hereof, and LESSEE shall, during the term hereof and during any and all extended terms, be primarily liable for the payment of rent and the performance of each and every covenant herein contained.**

Exhibit A at 19 (emphasis added).

      24.     A Consent to Assignment and Assumption of Lease dated June 29, 1990, consenting to Walton Enterprises' assignment of the Lease to Phillips Companies and the concurrent reassignment to ATI, states, in part:

       Nothing contained herein shall be construed to effect the release of any party now liable or obligated on said Lease.

      25.     The Assignment and Assumption of Lease between Walton Enterprises and Phillips Companies (Exhibit B) recognizes the continuing obligations of Walton Enterprises as lessee under the Lease, by providing that:

     Assignee further agrees that, unless and until [Walton Enterprises] has been by written agreement expressly released in all respects from any and all of its obligations under the Lease, Assignee shall not . . . enter into any agreement . . . which increases or changes in a material respect any obligations, contingent or otherwise, of [Walton Enterprises] under the Lease, without first obtaining the written consent of [Walton Enterprises] . . . .

Exhibit B at 2.

26.    In a letter dated February 21, 1991, from George M. Wells to the attorney for the Schonfelds, Walton Enterprises acknowledged its continuing obligations under the Lease by requesting that the Schonfelds release Walton Enterprises from its obligations under the Lease. A copy of the letter, with the proposed release which the Schonfelds refused to sign, is attached to this complaint as Exhibit C.

27.    In a letter dated April 11, 1991, from the Schonfelds' attorney to George M. Wells, the Schonfelds refused to release Walton Enterprises from its obligations under the Lease. A copy of the letter is attached to this complaint as Exhibit D.

28.    In August of 1992, Walton Enterprises again acknowledged its continuing obligations under the Lease, when Walton signed, on behalf of Walton Enterprises, a consent to an amendment to certain easements affecting the Property, which stated, with respect to the amendment, "nor does it increase or change in any material respect the obligations, contingent or otherwise, of Walton Enterprises under said Lease." A copy of the consent is attached to this complaint as Exhibit E.

29.    Walton and Does were shareholders and/or directors of Walton Enterprises when it was dissolved on or about November 7, 1990. As shareholders and/or directors of the dissolved corporation, they became liable for all of Walton Enterprises' obligations under the Lease. In addition, to the extent that they conducted business in the name of Walton Enterprises or executed documents in the name of Walton Enterprises after the corporation was dissolved, they are liable for all of Walton Enterprises' obligations under the Lease.

30.    Defendants have failed to fulfill their obligations under the Lease, including the payment of all rent due under Articles V and VI (Exhibit A at 7-14), the maintenance of insurance on the Property under Article VII (Exhibit A at 14-18), the making of all repairs and

maintenance under Article VIII (Exhibit A at 18), the payment of additional amounts under Articles IX and XIV (Exhibit A at 18-19 and 21), and other obligations.

31.    By failing to fulfill such obligations, defendants have breached the Lease.

32.    By virtue of defendants' breach of the Lease, McGoon is entitled to an accounting for all amounts due from defendants under the Lease and for all other obligations owed by defendants under the Lease and to payment of all such amounts and fulfillment of all such obligations.

WHEREFORE, plaintiff, Nancy Schonfeld McGoon, prays that the Court grant judgment in her favor, order an accounting by all defendants under the Lease, grant judgment in favor of plaintiff and against defendants jointly and severally for all amounts and obligations owed under the Lease, plus prejudgment and post-judgment interest, award McGoon her attorneys' fees, expenses, and costs in this action, and grant McGoon all other proper relief.

DATED:  June 25, 2004.

SHULTS LAW FIRM, LLP
200 West Capitol Avenue, Suite 1600
Little Rock, AR 72201-3637
(501) 375-2301

By:  *Steven Shults*
     Steven Shults
     Ark. Bar No. 78139

     Jason Reed
     Ark. Bar No. 01032

Attorneys for Plaintiff,
Nancy Schonfeld McGoon

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS

# *Exhibits Attached to Original Document in Court's Case File*